**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FERNANDO CATALAN-AGUILAR<br><br>Plaintiff,<br><br>v.<br><br>R3 EDUCATION, INC. dba MEDICAL UNIVERSITY OF THE AMERICAS,<br><br>Defendant. | JURY TRIAL DEMANDED<br><br>Civil Action No. 1:14-cv-12607-GAO |

**JOINT STATEMENT
PURSUANT TO FED. R. CIV. P. 26(f) AND L.R. 16.1**

**DESCRIPTION OF THE CASE**

Plaintiff Fernando Catalan-Aguilar was a student in the M.D. program at the Medial University of the Americas ("MUA"), a medical school operated by defendant R3 Education, Inc. He was dismissed as a result of not timely passing a milestone examination that MUA required for graduation. He claims his dismissal was improper.

Students in the M.D. program at MUA first complete a five-semester curriculum in basic sciences. To continue in the program, students must pass Step 1 of the United States Medical Licensing Examination ("USMLE") within fifteen months after completing their basic sciences curriculum. The USMLE is three-part examination for licensure to practice medicine in the United States, which is sponsored by the Federation of State Medical Boards ("FSMB") and the National Board of Medical Examiners ("NBME"). The examination assesses a medical student's

ability to demonstrate and apply the knowledge and skills required for safe and effective patient care.

After passing the Step 1 exam, students perform seventy-two weeks of clinical practice rotations at hospitals in the United States or Canada. In order to graduate from MUA and move on to the residency stage of their medical training, students also must pass the remaining two parts of the USMLE – the Step 2 Clinical Skills ("CS") examination, which assesses a student's ability to gather information from patients, perform medical examinations and communicate their findings to patients and colleagues, and the Step 2 Clinical Knowledge ("CK") examination, a multiple-choice test which focuses on the principles of clinical science important for the practice of medicine under supervision in postgraduate training. MUA requires that students pass both Step 2 exams to ensure that they have acquired the knowledge and skills required to safely and effectively practice medicine as a resident. In addition, MUA requires that students pass each Step 2 exam within three attempts and within twelve months after completing their clinical rotations. Students who do not meet these requirements are subject to being withdrawn from the M.D. program.

Catalan-Aguilar matriculated at MUA in May 2006. He completed his basic sciences curriculum in May 2008. Fifteen months later (after several failed attempts), he passed the USMLE Step 1 exam in August 2009. He then began his clinical rotations.

On April 13, 2011, Catalan-Aguilar failed his first attempt at the Step 2 CS exam. He ultimately passed that exam in February 2012.

On September 20, 2011, Catalan-Aguilar failed his first and only attempt at the Step 2 CK exam.

Catalan-Aguilar completed his seventy-two weeks of clinical rotations on October 14, 2011.

On October 24, 2011, Catalan-Aguilar emailed MUA Assistant Dean, Dr. Lucille Collins, inquiring about his deadline to pass the Step 2 exams. Dr. Collins responded the same day that MUA "requires successful completion of both the CK and CS exams within 12 months of the end date of your last [clinical rotation] in order to be eligible to receive the Doctor of Medicine degree." Twelve months from the completion of Catalan-Aguilar's clinical rotations was October 15, 2012. It is undisputed that he did not pass the Step 2 CK exam by that time.

On May 16, 2013 Catalan-Aguilar took an NBME "self-assessment," which is designed to resemble the content of the Step 2 CK exam. He scored just 80 points out of a possible 800 – far below what would equate to a passing score on the Step 2 CK exam itself. That same day, Catalan-Aguilar sent an email to MUA Dean of Clinical Medicine, Dr. Tamara Tilleman, reporting the results of the self-assessment and conceding that his Step 2 exam preparation "strategy [wa]s not working."

On July 22, 2013, Dr. Tilleman sent an email to Catalan-Aguilar, informing him that he needed to submit an approved study plan before MUA would certify him to attempt the Step 2 CK exam a second time. Catalan-Aguilar submitted a study plan on August 8, 2013, which was approved. That same day, Dr. Tilleman emailed Dr. Collins, the Assistant Dean, noting that Catalan-Aguilar's status as an MUA student might need to be reviewed due to his failure in his first attempt to pass the Step 2 CK exam and his low self-assessment scores. Dr. Tillman also noted that it was more than seven years since Catalan-Aguilar had begun his medical studies at MUA.



/

On August 17, 2013, Catalan-Aguilar emailed Dr. Tilleman with the results of another NBME self-assessment, which he had taken the previous day. This time he scored just 130 points out of a possible 800 – again well below what would correlate to a passing score on the Step 2 CK exam itself.

Because Catalan-Aguilar was failing to demonstrate improvement in his readiness to pass the Step 2 CK exam, and because he was well beyond the October 2012 deadline for passing the exam, MUA informed Catalan-Aguilar in September 2013 that he would no longer be considered enrolled in the M.D. program.

Shortly thereafter, on October 2, 2013, Catalan-Aguilar took another NBME self-assessment exam, which resulted in a score of 580 out of 800 – a dramatic difference from his prior results. In an email to Dr. Tilleman the same day, Catalan-Aguilar conceded that he was "not sure what to think about this score." He admitted that he "had taken this version of the exam in 2012" and "the questions seemed familiar to me." Dr. Tilleman responded the next day, noting her concern that the test result was compromised.

On October 7, 2013, Catalan-Aguilar emailed Dr. Tilleman with results of another self-assessment – this one involving a "USMLE World," not the usual NBME, self-assessment. This self-assessment resulted in a score of 438 out of 800. In reporting the score to Dr. Tilleman, Catalan-Aguilar conceded that "the length of the [USMLE World] questions was a bit shorter than the real exam and [that the] questions were also a little less difficult than those of the NBME [self-assessment]."

Dr. Tilleman asked Catalan-Aguilar whether one or both of the exams had been untimed and/or been taken "open book," either of which would have conclusively demonstrated to her the unreliability of these scores. Catalan-Aguilar did not respond.

On October 17, 2013, Catalan-Aguilar received a letter from the MUA Executive Dean, Dr. Gordon Green, informing him that he would be withdrawn from MUA for failure to comply with MUA's policy requiring passage of the Step 2 CS and CK exams passage within three attempts and within twelve months of completing his clinical rotations. Catalan-Aguilar appealed the decision to withdraw him, which was upheld.

Catalan-Aguilar filed this lawsuit on June 23, 2014. He alleges that the October 2 and October 7, 2013 self-assessment scores demonstrated that he had satisfactorily complied with the agreed study plan and that MUA accordingly was obligated to allow him an additional attempt to pass the Step 2 CK exam. He alleges that MUA's refusal to allow him to attempt the Step 2 CK exam a second time was an arbitrary and capricious breach of the parties' agreement and a breach of the implied covenant of good faith and fair dealing. He also alleges that he was "never notified that he was being considered for dismissal" prior to Dr. Green's October 17 letter. He also alleges that MUA does not have any written policy requiring passage of the USMLE Step 2 exams within twelve months of completing clinical rotations, or that any such policy was waived by agreement.

R3 denies these allegations in their entirety. R3 asserts that its policy concerning passage of the Step 2 exams had been published to all students, including Catalan-Aguilar, in 2010, and that it was specifically confirmed to him in the October 24, 2011 email exchange described above. R3 asserts that the October 2013 self-assessment results did not provide a <u>reliable</u> indication that he was prepared to retake the Step 2 CK exam: these scores were completely inconsistent with Catalan-Aguilar's prior performance; Catalan-Aguilar reported them almost immediately after learning that he no longer would be considered enrolled; and he effectively conceded that neither self-assessment reflected a realistic measure of his readiness to take the

actual Step 2 CK exam – i.e., he previously had taken the October 2 exam, so the questions were familiar to him; the October 7 exam used admittedly shorter and easier questions; and Catalan-Aguilar did not respond to Dr. Tilleman's questions as to whether the exams were untimed or taken "open book." Accordingly, R3 contends that MUA's decision not to approve a second Step 2 CK attempt was a legitimate exercise of MUA's educational judgment.

**STATEMENT PURSUANT TO LOCAL RULE 16.1(B)**

Counsel for Plaintiff and Defendant have conferred pursuant to Fed. R. Civ. P. 26(f) and L.R. 16.1(b).

**PROPOSED AGENDA FOR THE SCHEDULING CONFERENCE**

1. Proposed Schedule
2. Proposed Discovery Event Limitations
3. Consent to a Magistrate Judge
4. Status of Settlement Discussions
5. Possibility of Alternative Dispute Resolution
6. Entry of Stipulated Confidentiality Agreement and Protective Order

**PROPOSED SCHEDULE**

| **Event** | **Date / Deadline** |
|---|---|
| Exchange initial disclosures | Within ten (10) days after the initial scheduling conference |
| Motions to join additional parties or assert new claims or defenses | Within one (1) month after initial disclosures |
| Serve fact discovery | Within three (3) months after scheduling conference |
| Complete fact discovery | Within eight (8) months after scheduling conference |
| Serve expert reports pursuant to Fed. R. Civ. P. 26(a)(2) | Within one (1) month after the completion of fact discovery |
| Serve rebuttal expert reports | Within one (1) month after initial expert reports |
| Complete expert depositions | Within one (1) month after rebuttal reports |
| File motions for summary judgment | Within one (1) month after completion of expert discovery |
| Submit Joint Pre-Trial Memorandum | Within thirty (30) days of the Court's Order on motion(s) for summary judgment |
| Final Pretrial Conference | TBD |
| Trial | TBD |

**PROPOSED DISCOVERY EVENT LIMITATIONS**

- Twenty-five (25) interrogatories per party (excluding appropriate sub-parts)

**MAGISTRATE JUDGE**

The parties do not consent to trial by a Magistrate Judge.

**SETTLEMENT PROPOSALS AND ALTERNATIVE DISPUTE RESOLUTION**

Catalan-Aguilar's counsel provided R3's counsel with a written Settlement Proposal Pursuant to Local Rule 16.1(c) on September 10, 2014. R3's counsel will respond on or before the date of the Scheduling Conference.

The parties have considered and will continue to consider both binding and non-binding alternative dispute resolution procedures, but do not believe that such procedures are appropriate to pursue at the present time.

**PRIVILEGED AND TRIAL PREPARATION MATERIAL**

The undersigned counsel agree to take steps to minimize the risk of waiver of privilege or work-product protection, including the following procedures for asserting privilege claims after production. If information or documents alleged to be subject to attorney-client privilege or attorney work product are inadvertently produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or work product for withholding production to which the producing party would otherwise be entitled. If a claim of inadvertent production is made with respect to information or documents then in the custody of another party, the receiving party, without prejudice to contesting the applicability of any claim of attorney-client or attorney work product, shall promptly return to the claiming party the material to which the claim of inadvertent production has been made, and the receiving party shall not use such information or documents for any purpose. If the receiving party disclosed the information or documents before being notified, it must take reasonable steps to retrieve such material. The party returning such material may serve a document request, an interrogatory and/or move the court for an order compelling production of the material, but said motion shall

not assert as a ground for entering such an order the fact or circumstance of the inadvertent production.

**CERTIFICATIONS PURSUANT TO LOCAL RULE 16.1(d)(3)**

The parties have conferred or will confer with their respective counsel with a view to establishing a budget for the costs of conducting the full course, and various alternative courses, of the litigation. Signed statements to this effect will be filed before or at the Scheduling Conference.

Respectfully submitted,

FERNANDO CATALAN-AGUILAR
By his Attorneys,

/s/ Jason J. Bach
Jason J. Bach
THE BACH LAW FIRM, LLC
6053 South Fort Apache Road
Suite 130
Las Vegas, NV 89148
(702) 425-3723
(702) 925-8788 (fax)
jbach@bachlawfirm.com

Melody A. Alger
ALGER LAW LLC
400 Westminster Street
Suite 401
Providence, RI 02903
401-277-1070
401-277-1094 (fax)
malger@algerlaw.com

R3 EDUCATION, INC.
By its Attorneys,

/s/ Joseph D. Rutkowski
Daryl J. Lapp (BBO # 554980)
Joseph D. Rutkowski (BBO # 681997)
EDWARDS WILDMAN PALMER LLP
111 Huntington Avenue
Boston, MA 02199-7613
(617) 239-0100
(617) 227-4420 (fax)
dlapp@edwardswildman.com
jrutkowski@edwardswildman.com

October 22, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to all counsel of record as registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on this 22nd day of October, 2014.

/s/ Joseph D. Rutkowski
Joseph D. Rutkowski (BBO # 681997)



/

AM 38522637.2