UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FERNANDO CATALAN-AGUILAR<br><br>Plaintiff,<br><br>v.<br><br>R3 EDUCATION, INC. dba MEDICAL UNIVERSITY OF THE AMERICAS,<br><br>Defendant. | Civil Action No. 1:14-cv-12607-GAO |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION TO R3 EDUCATION, INC'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Fernando Catalan-Aguilar (hereinafter "Catalan"), by and through his counsel of record, The Bach Law Firm, LLC files his Memorandum in Support of Opposition to Motion for Summary Judgment.

**POINTS AND AUTHORITIES**

**A.   STATEMENT OF MATERIAL FACTS WHICH PRECLUDE SUMMARY JUDGMENT**

1. Catalan completed his clinical rotations at Medical University of the Americas (hereinafter "MUA") in October 2011. Exhibit 1, Deposition of Catalan, p. 92:7-9.

2. On October 24, 2011, Catalan learned for the first time that MUA instituted a policy which required students at MUA to complete the Step 1 and Step 2 USMLE exams within 12 months of completing their clinical rotations. Exhibit 1, p. 96:9-12.

3.      On July 22, 2013, Catalan received an email from Dean Tilleman stating that he needed to complete an academic plan for completing the Step 2 examination.  Exhibit 1, p. 59:7-13 and Exhibit 2, Email from Dr. Tilleman, dated July 22, 2013.

4.      Catalan completed an academic plan per Dean Tilleman's request and delivered it to her on August 8, 2013.  Exhibit 1, p. 59:17-22.

5.      Pursuant to the academic plan, Catalan and Defendant agreed that Dean Tilleman would certify Catalan to re-take the Step 2 examination if he submitted two passing NBME self assessment exam scores to her.  Exhibit 1, p. 62-63.

6.      Catalan and Defendant subsequently modified their agreement to allow Catalan to submit to Dr. Tilleman a passing score on the USMLE World practice examination in place of one of the NBME self assessment exam scores and if he did so she would certify him to retake the Step 2 exam.  Exhibit 1, p. 67-68, 69:8-15.

7.      After three months of studying, reviewing books, and watching videos, Catalan took a NBME self assessment exam pursuant to the academic plan agreement and obtained a high passing score.  Catalan submitted his passing score to Dr. Tilleman on October 2, 2013.  Exhibit 1, p. 70:18-24.

8.      Subsequently, Catalan spoke with Dr. Tilleman and again discussed taking the USMLE World practice exam in place of the second NBME self assessment exam pursuant to his academic plan agreement.  Again, Dr. Tilleman agreed to allow him to take the USMLS World exam as part of his certification to retake the Step 2 exam.  Exhibit 1, p. 74:18-22.

9.      Catalan then took the USMLE World practice exam and submitted his passing score to Dr. Tilleman on October 7, 2013, pursuant to their agreement.  Exhibit 1, p. 75:2-3.

10. Subsequently, Catalan received a letter from Defendant informing him that he had been withdrawn from the medical school. Exhibit 1, p. 99:3-6.

11. Despite completing his academic plan and submitting the two passing scores to Dr. Tilleman, which Defendant previously agreed would allow him to be certified to retake the Step 2 exam, Defendant breached its agreement with Catalan and dismissed him from the medical school without allowing him to take the Step 2 exam. Exhibit 1, p. 101:11-17.

**B.     Standard on Summary Judgment**

"Summary judgment is appropriate when `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir.1995) (quoting Fed.R.Civ.P. 56(c)). "To succeed in a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir.1990); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who `may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" *Barbour,* 63 F.3d at 37 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)). "There must be `sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers,* 902 F.2d at 143 (quoting *Anderson,* 477 U.S. at 249-50, 106 S.Ct. at 2510-11) (citations and footnote in *Anderson* omitted). The Court must "view the facts in the light most

favorable to the non-moving party, drawing all reasonable inferences in that party's favor."

*Barbour,* 63 F.3d at 36.

**B.   Material Questions of Fact Exist Regarding whether Catalan was Required to Pass the USMLE Step 2 within 12 Months of Completing his Clinical Rotations Due to the Subsequent Agreement and Academic Study Plan which He Entered into with MUA in August 2013**

MUA has not disputed that a contract was formed between MUA and Catalan on August 8, 2013 with regard to his academic plan and certification to take the Step 2 exam. In fact, MUA admits that it did grant Catalan additional time to complete his Step 2 exam requirement and that that commitment created a contractual obligation. MUA stated:

> At most, by granting Plaintiff some additional time in which to meet the Step 2 requirement and providing him the study plan, MUA implicitly committed to give Plaintiff some reasonable amount of time in which to meet the requirement. *MacDonald & Payne Co. v. Metallic Arts of New England*, 324 Mass. 353, 357, 86 N.E.2d 516, 518 (1949) (grant of extension of time to perform "would not mean that the time when the contract was to be completed was without limits; it would still have to be performed within a reasonable time"). How much time would be reasonable would depend upon "the nature of the contract, the probable intention of the parties as indicated by it, and the attendant circumstances." *Charles River Park, Inc. v. Boston Redevelopment Auth.*, 28 Mass. App. Ct. 795, 814, 557 N.E.2d 20, 32 (1990).

(Doc. 30, p. 13)

Whether a party substantially complied with the terms of a contract or whether the actions of a party constitute a material breach is a question of fact. *O'Connell Management Co. v. Carlyle-XIII Managers, Inc.,* 765 F.Supp. 779, 783 (D.Mass.1991).

Catalan acknowledges that the MUA policy states that students are to pass the USMLE Step 2 exam within 12 Months of completing their clinical rotations or they will be subject to dismissal from the medical school. Catalan further acknowledges that he completed his clinical rotations at MUA in October 2011 and did not pass the Step 2 exam prior to October 2012. Deposition of Catalan, p. 92:7-9. But MUA did not dismiss Catalan from the medical school in

October 2012. Nor did MUA send him any notices or warnings after October 2012 that he could be subject to dismissal for not completing the Step 2 exam.

In fact, on July 22, 2013, 9 months after MUA could have dismissed Catalan pursuant to the MUA policy, Dean Tilleman contacted him and informed him that he needed to complete an academic plan in order for MUA to approve him to take the Step 2 exam. Exhibit 1, p. 56-57; Exhibit 2, Email from Dr. Tilleman, dated July 22, 2013.

Catalan complied and completed an academic plan per Dean Tilleman's request and delivered it to her on August 8, 2013. Exhibit 1, p. 59:17-22.

Pursuant to the academic plan, Catalan and Defendant agreed that Dean Tilleman would certify Catalan to re-take the Step 2 examination if he submitted two passing NBME self assessment exam scores to her. Exhibit 1, p. 62-63. This agreement constitutes a binding contract entered into by MUA and Catalan.

In fact, Catalan and MUA subsequently modified their agreement to allow Catalan to submit to Dr. Tilleman a passing score on the USMLE World practice examination in place of one of the NBME self assessment exam scores and if he did so she would certify him to retake the Step 2 exam. Exhibit 1, p. 67-68, 69:8-15.

After three months of studying, reviewing books, and watching videos, Catalan took a NBME self assessment exam pursuant to the academic plan agreement and obtained a high passing score. Catalan submitted his passing score to Dr. Tilleman on October 2, 2013. Exhibit 1, p. 70:18-24.

Catalan than spoke with Dr. Tilleman and again discussed taking the USMLE World practice exam in place of the second NBME self assessment exam pursuant to his academic plan

agreement. Again, Dr. Tilleman agreed to allow him to take the USMLS World exam as part of his certification to retake the Step 2 exam. Exhibit 1, p. 74:18-22.

Catalan then took the USMLE World practice exam and submitted his passing score to Dr. Tilleman on October 7, 2013, pursuant to their agreement. Exhibit 1, p. 75:2-3.

Accordingly, Catalan complied with all of the requirements of his academic plan and fully complied with his contractual obligations with regard to his August 8, 2013 agreement with MUA by submitting his two passing scores to Dr. Tilleman. MUA breached its agreement with Catalan by failing to certify him to take the Step 2 exam despite their agreement whereby MUA promised to certify him to take the Step 2 exam if he provided Dr. Tilleman with a passing score on a NBME self assessment exam and a passing score on the USMLE World practice exam.

MUA never permitted Catalan to take the USMLE Step 2 exam and instead informed him that he had been withdrawn from the medical school in direct violation of their contractual obligations. Exhibit 1, p. 99:3-6 and 101:11-17.

MUA's decision to dismiss Catalan from medical school was based upon the fact that he had not completed the Step 2 exam prior to October 2012. Deposition of Catalan, p. 99:3-6. In MUA's dismissal of Catalan, it never mentioned the subsequent July 2013 request for him to submit an academic plan to become certified to take the Step 2 exam, nor the subsequent August 2013 agreement with Catalan that if he completed the requirements of his academic plan, he would be certified to take the Step 2 exam. Because of its failure to acknowledge the subsequent agreement, MUA's decision to dismiss Catalan was arbitrary and capricious and in direct violation of that express agreement with him.

C.  **Conclusion**

For the reasons set forth above, material questions of fact exist regarding Catalan's breach of contract and breach of covenant of good faith and fair dealing claims and MUA's motion for summary judgment on these claims should be denied in its entirety.

DATED this  21st day of September, 2015.

    /s/ Jason J. Bach
Jason J. Bach
THE BACH LAW FIRM, LLC
7881 W. Charleston Blvd., Suite 165
Las Vegas, NV 89117
(702) 925-8787
(702) 925-8788 (fax)
jbach@bachlawfirm.com

Melody A. Alger
ALGER LAW LLC
400 Westminster Street, Suite 401
Providence, RI 02903
(401) 277-1090
(401) 277-1094 (fax)
malger@algerlaw.com

**CERTIFICATE OF SERVICE PURSUANT TO LOCAL RULE 5.2(B)**

I, Jason J. Bach, hereby certify that this documents filed through the ECF system will be sent electronically to all counsel of record as registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on this 21st day of September, 2015.

/s/ Jason J. Bach
Jason J. Bach