## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

FERNANDO CATALAN-AGUILAR

            Plaintiff,

  v.

R3 EDUCATION, INC. dba MEDICAL
UNIVERSITY OF THE AMERICAS,

          Defendant.

Civil Action No. 1:14-cv-12607-GAO

## JOINT PRE-TRIAL MEMORANDUM

Pursuant to Local Rule 15.6(d), the parties submit the following joint pretrial memorandum.

**I.      Concise Summary of the Evidence.**

    **(a)      Plaintiff**

1.      Catalan completed his clinical rotations at Medical University of the Americas (hereinafter "MUA") in October 2011.

2.      On October 24, 2011, Catalan learned for the first time that MUA instituted a policy which required students at MUA to complete the Step 1 and Step 2 USMLE exams within 12 months of completing their clinical rotations.

3.      On July 22, 2013, Catalan received an email from Dean Tilleman stating that he needed to complete an academic plan for completing the Step 2 examination.

4.      Catalan completed an academic plan per Dean Tilleman's request and delivered it to her on August 8, 2013.

5.      Pursuant to the academic plan, Catalan and Defendant agreed that Dean Tilleman would certify Catalan to re-take the Step 2 examination if he submitted two passing NBME self assessment  exam scores to her.

6.      Catalan and Defendant subsequently modified their agreement to allow Catalan to submit to Dr. Tilleman a passing score on the USMLE World practice examination in place of one of the NBME self assessment exam scores and if he did so she would certify him to retake the Step 2 exam.

7.      After three months of studying, reviewing books, and watching videos, Catalan took a NBME self assessment exam pursuant to the academic plan agreement and obtained a high passing score.  Catalan submitted his passing score to Dr. Tilleman on October 2, 2013.

8.      Subsequently, Catalan spoke with Dr. Tilleman and again discussed taking the USMLE World practice exam in place of the second NBME self assessment exam pursuant to his academic plan agreement.  Again, Dr. Tilleman agreed to allow him to take the USMLS World exam as part of his certification to retake the Step 2 exam.

9.      Catalan then took the USMLE World practice exam and submitted his passing score to Dr. Tilleman on October 7, 2013, pursuant to their agreement.

10.     Subsequently, Catalan received a letter from Defendant informing him that he had been withdrawn from the medical school.

11.     Despite completing his academic plan and submitting the two passing scores to Dr. Tilleman, which Defendant previously agreed would allow him to be certified to retake the Step 2 exam, Defendant breached its agreement with Catalan and dismissed him from the medical school without allowing him to take the Step 2 exam.

**(b)      Defendant**

Plaintiff Fernando Catalan-Aguilar was a student in the medical doctor (M.D.) program at the Medical University of the Americas ("MUA"), which is operated by the defendant R3 Education, Inc. ("R3").  Beginning in 2010, MUA required all M.D. students to pass two

2

qualifying examinations (the Step 2 CS exam and Step 2 CK exam) within twelve months of completing their clinical rotations in order to graduate or be subject to dismissal ("the Policy"). This Policy was in writing, and Plaintiff was aware of the Policy as of February 28, 2011 or October 24, 2011 at the very least.  Plaintiff completed his clinical rotations on October 14, 2011.  Plaintiff attempted the Step 2 CK exam once, on September 20, 2011, but failed by a wide margin.

Although MUA could have dismissed Plaintiff at the end of that twelve-month period, MUA gave him extra time to demonstrate that he was ready to re-take the exam.  As part of his preparation to re-take the Step 2 CK exam, Plaintiff took several "self-assessments" issued by the NBME – the organization that administers the USMLE exams.  The NBME self-assessment uses questions from prior USMLE exams.  Not surprisingly, studies have shown a correlation between performance on the NBME self-assessment and performance on the USMLE exam. Tilleman Dep. From October 2012 (already twelve months after completing his clinical rotations) to May 2013, Plaintiff completed three NBME self-assessments.    He received very low failing scores on all three:  just 135, 137, and 140 points, respectively, out of a possible 800. On May 16, 2013, Plaintiff took his fourth NBME self-assessment.  Rather than showing improvement, and even though he had been studying for a year and a half since the completion of his clinical rotations, he did even worse than before:  He scored just 80 points out of a possible 800 – far below what would equate to a passing score on the Step 2 CK exam itself.  On July 22, 2013, Dean Tilleman sent an email to Plaintiff informing him that he needed to submit an approved study plan before MUA would decide whether to certify him to attempt the Step 2 CK exam a second time.  After his first study plan was rejected, Plaintiff submitted a revised study plan on August 8, 2013, which was approved.  The study plan required Plaintiff to take three

3

NBME self-assessments and submit the scores to Dean Tilleman so that she could determine if and when he was ready to take the Step 2 CK exam a second time.  On August 17, 2013, Plaintiff emailed to Dean Tilleman the results of another NBME self-assessment, which he had taken the previous day.  This time, he scored just 130 points out of a possible 800 – again well below what would correlate to a passing score on the Step 2 CK exam.  Thus, after taking five NBME self-assessments over the course of the preceding year, Plaintiff had failed to achieve anything close to a passing score and had not demonstrated any improvement in his readiness to pass the Step 2 CK exam.  On September 26, 2013, Plaintiff was informed that a committee of the school's management had met and decided he would no longer be considered enrolled in the M.D. program.

In a last-ditch attempt to avoid dismissal, Plaintiff quickly took and reported to Dean Tilleman the results of two more exams.  First, On October 2, 2013, Plaintiff took one of the NBME self-assessment exams he had taken previously, which resulted in a score of 580 out of 800 – a dramatic difference from his prior results.  This test was determined by Dean Tilleman to be invalid.  In an email to Dean Tilleman Plaintiff conceded that he was "not sure what to think about this score."  Plaintiff admitted that he had taken this version of the exam in 2012 and that the questions seemed familiar to him.  Dean Tilleman responded the next day, agreeing that the test result was compromised on this basis alone.  She also was unable to determine if Plaintiff had taken the exam "open book" or had taken it un-timed, either of which would have further compromised the score.  Second, on October 7, 2013, Plaintiff emailed to Dean Tilleman the results of a completely different practice test issued by "USMLE World" – not an NBME self-assessment, as required by his study plan.  This practice test resulted in a score of 438 out of 800. In reporting the score to Dean Tilleman, Plaintiff conceded that the length of the USMLE World

4

questions were shorter and less difficult than those of the NBME self-assessment. Dean Tilleman did not consider the USMLE World to be reliable because, unlike NBME self-assessments, there is no published correlation between USMLE World tests and success on the actual USMLE exam. Because Plaintiff had not obtained valid passing scores on two NBME self-assessment exams, Dean Tillman declined to certify Plaintiff to re-take the Step 2 CK exam. On October 17, 2013, Plaintiff received a letter from the MUA Executive Dean, Dr. Gordon Green, informing him that he would be withdrawn from MUA on or before November 8, 2013 because he failed to pass both Step 2 exams within three attempts and within twelve months of completing his clinical rotations. Plaintiff appealed the decision to withdraw him, but it was upheld.

Following his dismissal, Plaintiff transferred to the Caribbean Medical University in February 2014. That school also requires students to pass the Step 2 exams to graduate and requires students to pass an NBME test taken at a testing center before certifying the student to sit for the Step 2 exam. Plaintiff still has not scheduled to re-take the Step 2 CK exam, nor has he yet taken the NBME test.

## II.   Statement of Facts Established by the Pleadings, Stipulations of Counsel and Admissions.

Plaintiff matriculated as a student in the M.D. program at Medical University of the Americas ("MUA") in May 2006. Students in the M.D. program at MUA first must complete a five-semester curriculum in basic sciences. Plaintiff completed the basic sciences curriculum at MUA in May 2008. In order to continue in the M.D. program at MUA, students who have completed the basic sciences curriculum are required to pass the United States Medical Licensing Examination ("USMLE") Step 1 exam. The USMLE is a three-step examination for licensure to practice medicine in the United States. Plaintiff's deadline for passing the USMLE

Step 1 exam was August 31, 2009.  Plaintiff first took the USMLE Step 1 exam on July 30, 2008.  Plaintiff failed the USMLE Step 1 exam on your first attempt. Plaintiff attempted the USMLE Step 1 exam for the second time on May 6, 2009, and failed.  Plaintiff took the USMLE Step 1 exam for the third time on August 31, 2009, and passed.  After passing the USMLE Step 1 exam, students in the M.D. program at MUA perform seventy-two weeks of clinical practice rotations at hospitals in the United States or Canada.  Plaintiff began his clinical practice rotations in December 2009.

Plaintiff was informed as of at least October 24, 2011 that he was required as a matter of school policy to pass the Step 2 exams within 12 months of completing his clinical rotation in order to graduate.  MUA students must be certified by the office of the Associate Dean of Clinical Medicine to sit for the USMLE Step 2 CS and Step 2 CK exams.  Plaintiff first attempted the USMLE Step 2 CS exam on April 13, 2011, and failed.  On February 23, 2012, Plaintiff took the USMLE Step 2 CS exam for the second time and passed.

Plaintiff took a six-week, Kaplan review course for the USMLE Step 2 CK exam, which review course he completed on or about June 26, 2011.  Plaintiff first attempted the USMLE Step 2 CK exam on September 20, 2011 and failed.  Plaintiff completed his clinical rotations on or about October 14, 2011.  Plaintiff took an NBME self-assessment on May 16, 2013 and scored 80 out of 800 possible points, which was the approximately equivalent to a failing score of 150 on the USMLE Step 2 CK exam.

On July 22, 2013, Dr. Tilleman sent Plaintiff an email in which she stated that in order to approve Plaintiff's next request to take the Step 2 CK exam, "we need to see your Step 2 CK academic plan (attached, and not in the format you sent us) along with your NBMEs," meaning Plaintiff's  NBME self-assessments.  Plaintiff submitted an academic plan to Dr. Tilleman on

6

August 8, 2013.  Pursuant to the academic plan, Plaintiff had to submit two passing NBME self-assessment exam scores to Dean Tilleman before she would approve him to retake the Stem 2 CK Exam.

Plaintiff took an NBME self-assessment on August 16, 2013 and scored 130 out of 800 possible points, which was approximately equivalent to a failing score of 160 on the USMLE Step 2 CK exam.  In an exchange of emails with Dr. Tilleman on August 20 and 21, 2013, Dr. Tilleman noted that none of the NBME self-assessments Plaintiff had taken were equivalent to a passing score on the USMLE Step 2 CK exam.  In the August 20-21 email exchange, Dr. Tillman also said, "What is your plan because obviously the strategy that you had until now is not working.  I need you to come [up] with a plan that will advance your knowledge."  In Plaintiff's response to Dr. Tilleman, Plaintiff stated that he had signed up for a Falcon Review course and that he was planning on taking another NBME practice exam in a few weeks.

On September 23, 2013, Financial Aid Officer Piyanet Curran informed Plaintiff via email that his record was under review and that a committee of the school's management had met and determined that Plaintiff was no longer considered enrolled.  In response to Plaintiff's inquiry, Dr. Tilleman informed Plaintiff that based on his two reported NBME self-assessments, Plaintiff could not be certified to retake the USMLE Step 2 CK exam. Plaintiff took a further NBME self-assessment on October 2, 2013 and scored 580 out of 800, which was approximately equivalent to a score of 254 on the USMLE Step 2 CK exam.  In an exchange of emails with Dr. Tilleman on October 2 and 3, 2013, Plaintiff stated, "Im [sic] not sure what to think about this score of 249.  My records show that I had taken this version of the exam in 2012 so, hopefully its [sic] not because the questions seemed familiar to me.  But I did complete the entire Falcon review videos, books plus Exam Master and USMLE world questions."  In her response Dr.

Tilleman said, "the jump from 130 to 246 may be too high even if you took the Falcon review course." In or about October 2 to October 7, 2013, Plaintiff completed a "USMLE World" practice exam and scored 438 points which is equivalent to a score of 213 on the USMLE Step 2 CK exam. Plaintiff sent the results of the USMLE World practice exam to Dr. Tilleman on October 7, 2013. In his October 7, 2013 email to Dr. Tilman, Plaintiff said, "I noticed that the length of the questions [on the USMLE World practice exam] was a bit shorter than the real exam and [the] questions were also a little less difficult than those of the NBME," meaning the NBME self-evaluations.

## III.    Contested Issues of Fact.

R3's position is that there are no contested material factual issues as outlined in its memorandum in support of summary judgment and reply brief.

Plaintiff contends that by accepting Plaintiff's August 8, 2013 academic plan, MUA agreed not to dismiss Plaintiff under the Policy if he could submit two passing NBME self-assessment scores to demonstrate that he could be certified to take the Step 2 CK exam. Plaintiff also contends that Dean Tilleman agreed to accept a passing score from the USMLE World practice exam in place of one of the NBME self-assessment exam scores. R3 disputes these facts.

## IV.    Any Jurisdictional Questions.

There are no jurisdictional questions.

## V.    Questions Raised by Pending Motions

R3's Motion for Summary Judgment remains pending. R3 intends on filing a motion in limine to preclude evidence of speculative damages relating to Plaintiff's alleged loss of earning

as a medical doctor.

**VI.     Issues of Law, Including Evidentiary Questions.**

    **(a)     Plaintiff's Issues**

    1.     Whether Defendant's conduct in agreeing to not dismiss Catalan and allow him to re-take the Step 2 exam if he completed his academic plan in submitting the two passing scores to Dr. Tilleman, then dismissing him after submitting the two passing scores, constitutes a breach of contract and breach of the covenant of good faith and fair dealing.

    2.     What damages are Catalan entitled to recover due to Defendant's breach of contract and tortious breach of the covenant of good faith and fair dealing.

    **(b)     Defendant's Issues**

    1.     Whether Defendant is entitled to judgment as a matter of law where there are no facts supporting the allegation the MUA waived the Policy or agreed to modify the Policy.  *See* Defendant's pending motion for summary judgment.

    2.     Whether Plaintiff's recovery is limited to nominal damages on the grounds that he cannot prove that MUA's actions caused him any damage.  "Under Massachusetts law, to recover expectation damages for breach of contract the plaintiff must prove by a preponderance that an agreement existed, the agreement was breached, and the breach caused the plaintiff to suffer damages."  *Gemini Investors Inc. v. AmeriPark, Inc.*, 643 F.3d 43, 48 (1st Cir. 2011).  "'Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed[.]'"  *Salvas v. Wal–Mart Stores, Inc.*, 452 Mass. 337, 374 (2008) (quoting

Restatement (Second) of Contracts § 347, cmt. a (1981)).  Recovery is limited to the damages caused by the defendant's breach and "can be had only for loss that would not have occurred but for the breach."  *Taylor v. Int'l Indus., Inc.*, 8 Mass. App. Ct. 865, 868 (1979).  Likewise, without causation there is no claim for breach of the implied covenant of good faith and fair dealing.  *Med. Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 22 (1st Cir. 2002).   Plaintiff has no reasonable expectation of proving that harm occurred as a result of any breach by R3.  Moreover, Plaintiff's claimed damages are speculative and unrecoverable.  *See Pierce v. Clark*, 66 Mass. App. Ct. 912, 914, 851 N.E.2d 450, 454 (2006) ("While it is true that a plaintiff need not prove damages with mathematical certainty, 'damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty.").  Plaintiff cannot prove by a preponderance that if R3 had not dismissed him he would have qualified to sit for the Step 2 CK exam, that he would have passed the Step 2 CK exam, that he would have graduated medical school, that he would have been hired by a doctor, or that he would have retained a specific salary that he has allegedly lost.  Plaintiff intends to submit a motion in limine to preclude evidence of such alleged damages.

3.      Whether Plaintiff is entitled to punitive damages.  It is black-letter law in Massachusetts that punitive and exemplary damages are not allowed unless explicitly authorized by statute.  *See, e.g., Gaisor v. Ma. Gen. Hosp.*, 446 Mass. 645, 655 n.15 (2006); *Flesner v. Technical Comm. Corp.*, 410 Mass. 805, 813 (1991); *Santana v. Registrars of Voters*, 398 Mass. 862, 867 (1986); *Lowell v. Ma. Bonding & Ins. Co.*, 313 Mass. 257, 269 (1943).  There are no punitive damages in contract actions.  *Hall v. Paine*, 224 Mass. 62, 68 (1916).   None of Plaintiff's claims arise under statutes, let alone statutes providing for punitive or exemplary damages.

AM 54915193.1

**VII.    Any Requested Amendments to the Pleadings.**

      None.

**VIII.   Any Additional Matters to Aid in the Disposition of the Action.**

      None.

**IX.    Probable Length of Trial.**

      Two days.

**X.     Names and Addresses of Witnesses Called by Defendant Who Will Testify at Trial.**

      Plaintiff expects to call the following witnesses to testify at trial:

    1.      Fernando Catalan-Aguilar
             c/o Alger Law LLC
             400 Westminster Street, Suite 401
             Providence, RI 02903
             and
             The Bach Law Firm, LLC
             7881 W. Charleston Blvd., Suite 165
             Las Vegas, NV 89117

    2.      Tamara R. Tilleman M.D., Ph.D., MPA
             Dean of Clinical Medicine Medical
             Medical University of the Americas
             27 Jackson Road
             Suite 302
             Devens, Massachusetts 01434
             (978) 862-9500

    3.      Gordon Green, M.D.
             Executive Dean
             Medical University of the Americas
             27 Jackson Road
             Suite 302
             Devens, Massachusetts 01434
             (978) 862-9500

AM 54915193.1

4.      Amy LeCain
        School Registrar
        Medical University of the Americas
        27 Jackson Road
        Suite 302
        Devens, Massachusetts 01434
        (978) 862-9500

R3 expects to call the following witnesses to testify at trial:

1.      Tamara Tilleman, M.D., Ph.D.
        Dean of Clinical Medicine
        Medical University of the Americas
        27 Jackson Road
        Suite 302
        Devens, Massachusetts 01434
        (978) 862-9500

2.      Gordon Green, M.D.
        Executive Dean
        Medical University of the Americas
        27 Jackson Road
        Suite 302
        Devens, Massachusetts 01434
        (978) 862-9500

**XI.    Lists of Exhibits.**

**(a) Plaintiff's Exhibits**

|      | #          | DOCUMENTS.                                                                                                          |
|------|------------|-------------------------------------------------------------------------------------------------------------------|
| 1.   | CA 001-071 | MUA'S CLINICAL HANDBOOK                                                                                            |
| 2.   | CA 072-073 | MUA's Student Contract                                                                                             |
| 3.   | CA 074-134 | Medical University of the Americas Student Handbook                                                                |
| 4.   | CA 135     | Medical University of the Americas Supplement to the Student Handbook                                              |
| 5.   | CA 136-138 | Welcome letter from Tamara R. Tilleman re: passing 18 weeks rotations                                              |
| 6.   | CA 139     | National Board of Medical Examiners, NBME Comprehensive Clinical Science Self-Assessment (CCSSA) Performance Profile |
| 7.   | CA 140     | Simulated Exam from the USMLE World question bank                                                                  |

| | | |
|---|---|---|
| 8. | CA 141 | Email from Dr. Lucille Collins to Plaintiff, dated: Oct 24, 2011, subject: Step 2 CK |
| 9. | CA 142 | Email from Dr. Lucille Collins to Plaintiff, dated: Apr 27, 2012, subject: Step 2 CS exam results and email from Linda H. Perangelo to Plaintiff, dated Jun 22, 2012, subject: Minimum Passing Score USMLE Step 2CK |
| 10. | CA 143 | Email to All Medical University of the Americans Students, dated: August 10, 2012, subject: Changes to Clinical Medicine Program |
| 11. | CA 144 | Emails between Dr. Lucille Collins and Plaintiff, subject: update? |
| 12. | CA 145 | Emails between Linda H. Perangelo and Plaintiff, subject: Second assessment test results |
| 13. | CA 146 | Emails between Dr. Tamara Tilleman and Plaintiff, subject: Self-assessment score for step 2 |
| 14. | CA 147 | Emails between Dr. Tamara Tilleman and Plaintiff, subject: NBME practice test results and Email from Piyanet Judy Curran to Plaintiff, subject: Loan Deferment application |
| 15. | CA 148-232 | U.S. Department of Education, Staff Analysis of the Standards for the Evaluation of Medical Schools Used by Nevis, Prepared March 2012 |
| 16. | CA 233 | Letter from Dr. Gordon J. Green to Plaintiff, dated: October 17, 2013 |
| 17. | CA 234 | Letter from Plaintiff to Ms. LeCain, dated: October 17, 2013 |
| 18. | CA 235 | Letter from Dr. Gordon J. Green to Plaintiff, dated: November 21, 2013 |
| 19. | CA 236-239 | Email from Plaintiff to Dr. Tilleman, subject: Re: Catalan-Aguilar Fernando Step 2 CK certification + NBME, dated: August 8, 2013 |
| 20. | CA 240-251 | MUA Academic Plan for USMLE Step 2 |
| 21. | CA 252-253 | Email from Dr. Tilleman to Plaintiff, subject: Fernando Catalan-NBME Practice Test Scores, dated: October 3, 2013 |
| 22. | CA 254 | Email from Plaintiff to Dr. Tilleman, subject: USMLE World Simulated Exam, dated: October 7, 2013 |
| 23. | CA 255-258 | Plaintiff's NBME Comprehensive Clinical Science Self-Assessment (CCSSA) Performance Profile, Test date: !0/2/2013 |
| 24. | CA 259 | Plaintiff's USMLEWORLD simulated exam |
| 25. | CA 260-263 | Plaintiff's NBME Comprehensive Clinical Science Self-Assessment (CCSSA) Longitudinal Performance Profile, History of Performance Across Multiple Completed Tests, Report date: 10/2/2013 |

| 26. | CA 264 | Step 2 CK preparation at home, May 20, 2013 to June 21, 2013 (93 hrs 5 min) |
|---|---|---|
| 27. | CA 265 | Copy of check for CMU Registration Charges, check number 2293 |
| 28. | CA 266-267 | Copy of enrollment email and costs from Kaplan Medical for review course |
| 29. | CA 268 | Email from Plaintiff to Falcon Staff, subject: Falcon physician reviews Customer Receipt/Purchase Confirmation, dated May 20, 2013 |
| 30. | CA 269-282 | Copy of checks for Rent |
| 31. | CA 283 | CMU Student Account Statement, dated issued: June 15, 2015 |
| 32. | | Deposition Transcript of Plaintiff Fernando Catalan-Aguilar |
| 33. | | Deposition Transcript of Tamara R. Tilleman, M.D. |
| 34. | | Deposition Transcript of Gordon Green, M.D. |
| 35. | | Plaintiff's Responses to Defendant's Request for Admissions |
| 36. | | R3 Education, Inc.'s Response to Plaintiff's First Set of Interrogatories |
| 37. | | R3 Education, Inc.'s Response to Plaintiff's First Request for Production |

**(b) Defendant's Exhibits**

| | DESCRIPTION | |
|---|---|---|
| 1. | NBME Self-Assessment Score – 5/16/2013 | Deposition Ex. 1 (Tilleman) |
| 2. | NBME Self-Assessment Score – 8/16/2013 | Deposition Ex. 2 (Tilleman) |
| 3. | NBME Self-Assessment Score (1 page) – 10/2/2013 | Deposition Ex. 3 (Tilleman) |
| 4. | USMLE World Self-Assessment Score ("Not accepted") | Deposition Ex. 4 (Tilleman) |
| 5. | Email chain ending 8/8/2013 | Deposition Ex. 5 (Tilleman) |
| 6. | Email chain ending 10/3/2013 | Deposition Ex. 6 (Tilleman) |
| 7. | NBME Self-Assessment Score (4 pages) – 10/2/2013 | Deposition Ex. 7 (Tilleman) |
| 8. | Email dated 10/7/2013 between Plaintiff and Tamara Tilleman | Deposition Ex. 8 (Tilleman) |
| 9. | Memorandum to all MUA students | Deposition Ex. 9 (Catalan-Aguilar) |

14

| | **DESCRIPTION** | |
|---|---|---|
| 10. | Email chain ending 2/28/2011 between Melissa Moore, Christine Kumar, Karen Hastings, and Plaintiff | Deposition Ex. 10 (Catalan-Aguilar) |
| 11. | Email chain ending 3/1/2011 between Melissa Moore, Christine Kumar, Karen Hastings and Plaintiff | Deposition Ex. 11 (Catalan-Aguilar) |
| 12. | Dear Clinical Student letter | Deposition Ex. 12 (Catalan-Aguilar) |
| 13. | Academic Study Plan | Deposition Ex. 13 (Catalan-Aguilar) |
| 14. | Email dated 9/23/2013 between Plaintiff and Amy LeCain | Deposition Ex. 14 (Catalan-Aguilar) |
| 15. | Email chain ending 9/19/2013 between Plaintiff, Piyanet Curran, and Amy LeCain | Deposition Ex. 15 (Catalan-Aguilar) |
| 16. | Email chain ending 9/26/2013 9:31 a.m. between Tamara Tilleman, Amy LeCain, Lucille Collins, and Plaintiff | Deposition Ex. 16 (Catalan-Aguilar) |
| 17. | Email chain ending 10/24/2011 between Plaintiff and Lucille Collins | Deposition Ex. 17 (Catalan-Aguilar) |
| 18. | Letter dated 10/17/2013 from Gordon Green to Plaintiff | Deposition Ex. 18 (Green) |
| 19. | Letter dated 11/21/2013 from Gordon Green to Plaintiff | Deposition Ex. 19 (Green) |
| 20. | Plaintiffs' Response to Defendant's Request for Admission | R3 Summary Judgment Ex. A |
| 21. | Guidelines for Academic Probation and Dismissal | R3 Summary Judgment Ex. C |
| 22. | Summer 2009 MUA Handbook, Disclaimer Page | R3 Summary Judgment Ex. H |
| 23. | Summer 2009 MUA Handbook, Academic Guidelines | R3 Summary Judgment Ex. I |
| 24. | Email dated 8/17/2013 between Tamara Tilleman and Plaintiff | R3 Summary Judgment Ex. M |
| 25. | Verified Complaint | R3 Summary Judgment Ex. P |
| 26. | Joint Statement Pursuant to Fed. R. Civ. P. 16(f) and L.R. 16.1 | R3's Summary Judgment Ex. Q |
| 27. | MUA Internal Notes – Fernando Catalan-Aguilar | R3Education01527 |
| 28. | Email chain ending 1/29/2014 between Amy LeCain | R3Education00043 |

| | DESCRIPTION | |
|---|---|---|
| | and Plaintiff | |
| 29. | MUA Honor Code | CA 082 – CA 086 |
| 30. | Email chain ending 10/8/2013 between Plaintiff and Amy LeCain | R3Education00030 |
| 31. | Email chain ending 10/15/13 between Plaintiff and Amy LeCain | R3Education00031 |
| 32. | Email chain ending 10/17/2013 1:16 p.m. between Amy LeCain and Plaintiff | R3Education00035 |
| 33. | Email chain ending 10/17/2013 2:28 p.m. between Amy LeCain and Plaintiff | R3Education00032 |
| 34. | Email chain ending 10/17/2013 3:02 p.m. between Amy LeCain and Plaintiff | R3Education00033 |
| 35. | Email chain ending 10/23/2013 between Plaintiff and Tamara Tilleman | R3Education00331 |
| 36. | Email chain ending 11/11/2013 between Amy LeCain and Plaintiff | R3Education00039 |
| 37. | Email chain ending 10/2/2013 between Plaintiff and Tamara Tilleman | R3Education00306 |
| 38. | Email chain ending 8/21/2013 between Plaintiff and Tamara Tilleman | R3Education00447 |
| 39. | Email chain ending 9/26/2013 11:13 a.m. between Plaintiff and Tamara Tilleman | R3Education00449 |
| 40. | Email chain ending 11/21/2013 between Amy LeCain and Plaintiff | R3Education00040 |

## XII.    The Parties' Positions on Remaining Objections to the Evidence

The parties will confer prior to the pre-trial conference to determine what exhibits may be admitted without objection and will provide the Court with a list of agreed exhibits and a list of disputed exhibits containing a brief statement of the grounds for any objection.

16

R3 EDUCATION, INC.,
By its Attorneys,

/s/ Elizabeth H. Kelly
Daryl J. Lapp (BBO #554980)
daryl.lapp@lockelord.com
Elizabeth H. Kelly (BBO #672277)
liz.kelly@lockelord.com
Katherine A. Guarino (BBO #681848)
katherine.guarino@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
 (617) 239-0100

FERNANDO CATALAN-AGUILAR
By his Attorneys,

/s/ Jason J. Bach
Jason J. Bach
THE BACH LAW FIRM, LLC
6053 South Fort Apache Road
Suite 130
Las Vegas, NV 89148
(702) 425-3723
(702) 925-8788 (fax)
jbach@bachlawfirm.com

Melody A. Alger
ALGER LAW LLC
400 Westminster Street
Suite 401
Providence, RI 02903
401-277-1070
alger@algerlaw.com

October 1, 2015

## CERTIFICATE OF SERVICE

On October 1, 2015, I caused the foregoing document to be filed electronically using the CM/ECF system, which effected service upon all counsel of record.

/s/ Elizabeth H. Kelly
Elizabeth H. Kelly

AM 54915193.1