UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-12607-GAO

FERNANDO CATALAN-AGUILAR,
Plaintiff,

v.

R3 EDUCATION, INC. d/b/a
MEDICAL UNIVERSITY OF THE AMERICAS,
Defendant.

OPINION AND ORDER
October 15, 2015

O'TOOLE, D.J.

This case is a breach of contract action brought by the plaintiff, Fernando Catalan-Aguilar, against the defendant, R3 Education, Inc. The plaintiff attended the defendant's medical school, the Medical University of the Americas ("MUA"). He contends that the defendant violated its agreement with him when it dismissed him from MUA for failure to meet certain academic requirements. The defendant has moved for summary judgment in its favor, arguing that there are no material facts in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). For the reasons described below, that motion is granted.

## I. Background

The central facts can be briefly stated.[1] The plaintiff completed the bulk of his academic course at MUA and subsequent clinical rotations. He successfully passed a "Step 1" exam and a

[1] In a motion for summary judgment, a court "view[s] the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995). Here, very little, if anything, is factually disputed by the parties. All the facts in this opinion are drawn from statements and filings by the plaintiff, the non-moving party.

"Step 2 CS" exam, components of the United States Medical Licensing Examination ("USMLE"), but he failed to pass the "Step 2 CK" exam, a requirement for graduation. By school policy, a student may only sit for this exam if he has been certified as eligible to do so by the school administrators. Thus, in order to retake the Step 2 CK exam, the plaintiff needed to be certified by MUA's dean of clinical medicine. On October 24, 2011, shortly after failing that exam, the plaintiff learned that under a new MUA policy, he had to pass the Step 2 CK within one year of finishing his clinical rotations or face being dismissed from the school. He had completed his clinical rotations a couple weeks earlier on October 14; the one-year period would expire in October 2012.

Throughout 2011, 2012, and 2013, the plaintiff took various practice exams published by the National Board of Medical Examiners ("NBME") in an attempt to persuade the dean to certify him to retake the Step 2 CK exam. The plaintiff failed these practice exams. He then created a study plan in order to improve his performance so that he might succeed in passing the real exam. The plan included the successful completion of two NBME practice exams. That plan was approved by the dean of clinical medicine on August 8, 2013. The plaintiff took and failed another practice exam on August 13, 2013, and on September 23, the plaintiff was told that the school's management committee had met and decided that the plaintiff would be academically dismissed from the school.

The plaintiff thereafter took two additional practice tests and submitted the scores to the dean of clinical medicine. He passed both, but he admitted the passing scores may have been inaccurate due to methodological or testing flaws. The plaintiff acknowledged that he may have taken the first test before, because the questions seemed familiar to him. The second test was published by USMLE World, not NBME, and probably had shorter and easier questions. Between the first and second of these two suspect tests, the plaintiff spoke over the phone with the clinical

dean and she agreed, that it was a good idea for him to take the USMLE World exam, and he inferred from that that she would accept a passing score on that exam in deciding whether to certify him to retake the Step 2 CK exam that he still needed to pass.

The dean did not certify the plaintiff to retake the Step 2 CK exam. Instead, the plaintiff received a formal withdrawal letter from the executive dean of the school on October 17. The plaintiff appealed the decision by writing a letter to the executive dean. The decision to dismiss the plaintiff was upheld in another letter from the executive dean on November 21.

## II. Discussion

"Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." U.S. Liab. Ins. Co. v. Benchmark Const. Servs., Inc., 797 F.3d 116, 119 (1st Cir. 2015). Here, reading the facts most favorably to the plaintiff, he does not have a remedy under Massachusetts law.

Massachusetts law establishes that a university must not violate the "reasonable expectations" created by a contract between the student and the university. See Schaer v. Brandeis Univ., 735 N.E.2d 373, 378 (Mass. 2000). A university's disciplinary action must not be "arbitrary or capricious." See Coveney v. President & Trustees of the Coll. Of the Holy Cross, 445 N.E.2d 136, 138–39 (Mass. 1983). However, "[c]ourts are chary about interfering with academic and disciplinary decisions made by private colleges and universities," and universities receive wide discretion in those decisions. Schaer, 735 N.E.2d at 381 (quoting Schaer v. Brandeis Univ., 716 N.E.2d 1055, 1060 (Mass. App. Ct. 1999)).

Massachusetts courts will look to written handbook policies of a university to determine whether the university has honored its contractual obligations. See Schaer, 735 N.E.2d at 378–81; Berkowitz v. President & Fellows of Harvard Coll., 789 N.E.2d 575, 581–84 (Mass. App. Ct. 2003)

("In the absence of handbook language expressly limiting the docket committee's powers of inquiry, we are reluctant to read in restrictions that limit the university's discretion."). Additionally, schools are allowed to modify their policies unilaterally, and students are bound by the newer policies, not the ones that existed at the time the relationship of student and institution originated. See Coveney, 445 N.E.2d at 140.

Here, the plaintiff has not identified any facts that indicated that the defendant violated any binding obligations it owed him. The plaintiff cites no specific MUA policy or procedure which it violated when it discharged him. Rather, he argues that the approved study plan amounted to a binding agreement between him and MUA, and included an implied commitment to accept the scores of the last practice tests. Thus, he contends that by dismissing him in spite of his passing scores on those tests, MUA violated its contractual agreement with him.

The study plan and the plaintiff's communications with the clinical dean cannot bear the weight the plaintiff puts on them. Massachusetts law, in its deferential review of private university actions, does not compel MUA to waive its written policy requiring a passing score on the Step 2 CK exam simply because the university decided to give the plaintiff some leeway before finally enforcing that policy. See Berkowitz, 789 N.E.2d at 584. It is undisputed that it was MUA's written policy that students were subject to dismissal if they did not pass the Step 2 CK exam within one year of finishing their clinical rotations. It is undisputed that the plaintiff failed to pass that exam within the one-year window. After that one-year clock ran out, consistent with that the written policy, the plaintiff could have been dismissed at any time. Instead, MUA attempted to work with the plaintiff long past this date to see if he could prepare for and pass the Step 2 CK exam. His enrollment at MUA was terminated only after he had been given another year of grace.

Already a year late in showing his ability to pass the Step 2 CK exam and without any written policies to the contrary, the plaintiff cannot have reasonably expected his conversations with the clinical dean to create a binding obligation on the part of MUA. See Schaer, 735 N.E.2d at 378. The plaintiff has cited no actual university policy that the defendant violated in its academic decision. MUA did not waive its written certification policy when it decided not to strictly enforce it and dismiss him the instant his twelve-month window closed. See Berkowitz, 789 N.E.2d at 584. The choice of how to apply such policies is rightly left to the university's discretion. See Coveney, 445 N.E.2d at 139.

Accordingly the defendant's Motion for Summary Judgment (dkt. no. 29) is GRANTED in its entirety. Judgment shall enter for the defendant.

The defendant's Motion in Limine Regarding Plaintiff's Claimed Damages (dkt. no. 39) is therefore MOOT.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge